UNITED STATES *v.* UNION SUGAR DIV., CONSOLIDATED FOODS CORP.
(No. 5227)*

United States Court of Customs and Patent Appeals, December 8, 1966

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs
Section, *Sheila N. Ziff* for the United States
*Stein & Shostak* (*S. Richard Shostak*, of counsel) for appellee.

[Oral argument November 8, 1966 by Mrs. Ziff and Mr. Shostak]

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Associate Judges,
and Judge WILLIAM H. KIRKPATRICK**

ALMOND, Judge, delivered the opinion of the court:

The United States brings this appeal from the decision and judg-
ment of the United States Customs Court, Second Division, 55 Cust.
Ct. 113, C.D. 2559, holding parts of certain apparatus [1] to be entitled
to entry free of duty, under the provisions of paragraph 1604 of the
Tariff Act of 1930, as parts of "machinery for use in the manufacture
of sugar."

Appellant contends that the importation was properly classified and
assessed with duty under paragraph 353 of said Act, as modified by
the Torquay Protocol to the General Agreement on Tariffs and Trade,
86 Treas. Dec. 121, T.D. 52739, as "Articles having as an essential
feature an electrical element or device," at the rate of 13¾ per centum
ad valorem.

The statutes involved are:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739:

*C.A.D. 892.
**Senior District Judge, Eastern District of Pennsylvania, sitting by designation.
[1] The apparatus is known as a "Weibull conditioner and blender."

1

2 ·

Articles having as an essential feature an electrical element or device, * * * wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other (* * *)_____13¾% ad val.

Paragraph 1604 of the Tariff Act of 1930:

Agricultural implements: * * * machinery for use in the manufacture of sugar, * * * and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: * * *.

The issue presented requires us to determine whether the record supports the finding and conclusion of the Customs Court that the appellee, Union Sugar Div., Consolidated Foods Corp., affirmatively established that the merchandise at bar constitutes parts of "machinery for use in the manufacture of sugar" within the meaning and intendment of paragraph 1604.

The parties have stipulated that the imported merchandise is in chief value of metal and has as an essential feature an electrical element or device.

In addition to the stipulation, the record consists of the testimony of two witnesses, Melford Woods, factory superintendent of appellee's refinery at Betteravia, California, and Sylvester Heiner, chief engineer for the Amalgamated Sugar Co. of Ogden, Utah, and three exhibits introduced and offered by appellee. Both witnesses, through experience and education, were well qualified in their areas of endeavor, viz. the manufacture and refinement of sugar, and thoroughly familiar with the design, purpose, operation and function of the imported machinery.

We have examined the testimony and exhibits of record and feel warranted, on the basis thereof, in adopting in material substance the findings of fact of the court below predicated thereon. The record discloses that:

Appellee's plant presently utilizes the Weibull conditioner and blender and the witness Woods is in charge of its operation and repair. Woods testified that to his knowledge the equipment is used only in the sugar industry and that the entire machine weighs approximately 100 tons and consists of various mechanisms which are specially made and are essential to the operation of the conditioner and blender.

The witness testified relative to the basic procedure employed in the manufacture of sugar from beets. He stated that the beets are shred into thin slices and immersed in water, the sugar being extracted into a sugar solution which is purified by milk or lime and carbon dioxide; that it is then filtered, concentrated by evaporation, re-

filtered, and boiled down to the point of crystallization; that the crystals formed within the mother liquor are boiled to the size generally seen on the market; that the mixture of sugar and mother liquor is then fed to centrifugals, preliminarily dried, screened, and sent to the conditioning unit for further drying, cooling and blending; and that after completion of this process, the mixture is passed on to final screening.

The witness further testified that the Weibull conditioner and blender removes about 50 percent of the remaining surface moisture and the product is cooled and blended; that the removal of the moisture is necessary to produce a product which will not cake during shipment; that the conditioner is used primarily for sugar shipped in bulk, constituting more than 67 percent of appellee's production; that bulk shipment is a relatively new development in this field; that the imported unit blends the sugar by means of a revolving conveyor which, in its initial stage, is sprayed from the bridge and spread over a wide area within the unit; that, in addition, the sugar is removed from the bottom of the unit by a revolving conveyor; that this combination blends the grains into an almost uniform consistency; that after the grains leave the unit, they are sent to final screening where the grains are separated into the various sizes required by the trade; *and that bulk sugar is not completely manufactured before it goes to the conditioning and blending unit.*

The witness Woods described the process of conditioning followed by appellee before the conditioning and blending unit was installed and utilized. Under the prior process it was necessary to sack the sugar directly from production and allow it to cool in porous bags, then break up the hardened lumps and ship the product to customers. He testified that, with the volume of sugar now being supplied to bulk customers, labor costs and time consumed in this process were prohibitive. Under this process blending was accomplished by the mixing of the sugars contained in the various sacks that were cut open. He further testified that all manufacturers' bulk sugar must have some means of conditioning and blending before the product is shipped in bulk and that, absent the means afforded by the imported machinery, some producers used storage tanks through which conditioned air is passed and the sugar allowed to remain there for a period of time until the surface moisture has been dried and the sugar conditioned.

The witness Heiner testified that he is familiar with the process of manufacturing sugar and is particularly familiar with the Weibull conditioner and blender which is used to cool, dry and blend sugar to make it acceptable to bulk sugar customers; that the Weibull unit is not used in any industry other than the sugar industry; and that his

company uses the Weibull unit to perform the identical functions described by Mr. Woods.

Heiner further testified that at his company's plant, after the sugar has completed its conditioning, it goes to a screening operation where 6 or 8 Rotex classifiers are used to classify the sugar to meet specific customer requirements; that tests indicate the moisture contained on the surface of the grains of sugar entering the Weibull unit is approximately 0.035 percent, which is reduced to approximately 0.012 to 0.015 percent; and that the sugar is cooled from 36 to 42 degrees centigrade down to 25 to 30 degrees centigrade. This witness stated that at other plants of his company where there are no Weibull units, bulk sugar is always conditioned before it is shipped, that at one plant all sugar is conditioned for all uses, and that in his experience bulk sugar is a different commodity from bag sugar and requires some conditioning. Heiner further testified that the use of the Weibull conditioner and blender, or some other similar machinery, is essential to the manufacture of bulk sugar, and that the final removal of moisture by conditioning is part of the process of manufacturing sugar.

On the basis of the above factual summary, with pertinent comment on a line of cited cases, relating to the Tariff Act of 1930 and predecessor acts, involving the language "machinery for use in the manufacture of sugar," the Customs Court, in sustaining the protest, reasoned and concluded as follows:

The record * * * establishes that the entire machine performs the functions of blending, cooling, and drying or conditioning the refined sugar and that after [the sugar] leaves the conditioning unit, it is further treated or processed by several screening processes which are utilized for the purpose of separating the sugar into the various sizes required by the trade, from fine for table use to the coarsest product acceptable to the trade for commercial uses. It would also appear from the record that the conditioning machine removes about 50 percent of the remaining surface moisture and reduces the temperature from 36 to 42 degrees centigrade down to 25 to 30 degrees centigrade and that this process or a substitute therefore is necessary for the production of sugar for bulk shipments. Without this process or some conditioning process, the bulk sugar would cake and not be acceptable to the trade.

We are of the opinion that these functions are necessary for the manufacture of sugar and they do not constitute a processing for the purpose of shipment. It is obvious the product shipped must be merchantable and the cooling, blending, and drying of the sugar *per se* is a treating of said sugar which accomplishes this end. In fact, as indicated, *supra*, this step is not the last step in the manufacture or treatment of sugar, since it must be further screened before it becomes sugar in a commercial sense.

It, therefore, clearly appears that the conditioning machine does treat the sugar *per se* and, therefore, falls within the provision for parts of machinery for use in the manufacture of sugar, set forth in paragraph 1604 of the Tariff Act of 1930. * * *

The thrust of appellant's contentions is, in substance, that (1) the tariff and legislative history of the provision for "machinery for use in the manufacture of sugar" in paragraph 1604 of the Tariff Act of 1930 and predecessor provisions in the Tariff Acts of 1922 and 1913 and the holding of this court in *John S. James a/c The Consolidated Packaging Corp.* v. *United States,* 48 CCPA 75, C.A.D. 768, require that said provision be construed so as to embrace only machinery and parts thereof used in the manufacture of sugar up to its crystalline or raw state and not beyond, and that (2) the Weibull equipment, here involved, treats a completely manufactured, already refined sugar solely for transportation purposes.

Turning first to the second phase of appellant's contention, the testimony adduced by appellee amply supports the finding of the Customs Court that the Weibull equipment serves an essential function in the over-all process of manufacture of sugar. Its functions involve "blending, cooling, and drying or conditioning." While this treatment may well facilitate subsequent transportation of manufactured sugar, the record supports the conclusion that the object and purpose of such treatment of the sugar per se is to remove surface moisture and reduce the temperature to prevent sugar manufactured for shipment in bulk from caking and thereby render it salable and acceptable to the trade. A process of manufacture which produces an unmerchantable product, obviously at some intermediate step thereof, contains a hiatus or missing link. The record is clear that use of the imported equipment, or some suitable substitute therefor, to treat the unfinished product in the process of manufacture of bulk sugar is essential to supply that deficiency. We do not find persuasive appellant's contrary contention in this respect.

With reference to the first phase of appellant's contention, we find no inconsistency in the decision of the Customs Court and the rationale of this court in reaching its decision in the *John S. James* case, supra. The latter case from a factual standpoint is clearly distinguishable. In our judgment the rationale therein employed lends support to the decision of the Customs Court in the instant case.

The machine involved in the *John S. James* case was designed for and specifically used for the *packaging* of sugar. It in no manner acted upon, treated or came in contact with sugar per se *during the process of manufacture.* The sugar was taken from a storage bin *after* a series of manufacturing stages. It was noted that in one subsequent plant operation the sugar moved directly from the bin to the packaging machine. In holding that the machine did not come within the meaning of "machinery for use in the manufacture of sugar," this court stated: [2]

---

[2] 48 CCPA at 78–79.

Here we find the only function of the machine at bar is to weigh and package the completely refined sugar which was ready for the consumer before the machine had any function at all.

In resolving congressional intent in the use of the words "machinery for use in the manufacture of sugar," the court quoted the definition of the word "manufacture" as defined in Funk & Wagnall's New Standard Dictionary (1938), as follows:

manufacture, n. 1. The operation of making articles for use by working on or combining material; the production of goods, etc. by industrial processes or art; as, the manufacture of lace.

\* \* \* \* \* \* \*

2. Anything made by industrial art or processes; manufactured articles collectively; also figuratively, the product or result of any process \* \* \*.

With reference to the above quoted definition, the court said:[3]

Applying this meaning to the word "manufacture" as used in paragraph 1604, there can be no doubt that it does not encompass appellants' sugar weighing and packaging machine. This machine does not make sugar *or treat the sugar itself in any manner*. Its only function is to weigh and package the manufactured sugar. [Emphasis supplied.]

 Within the purview of the above definition of "manufacture," the instant case discloses the "making" of bulk sugar by "working on" the material therein. It further involves the "product or result" of a continuous process. We think the blending, cooling and drying under the facts of this case constitute steps in the process of manufacture or "making" of bulk sugar.

Implicit also in the holding of this court in *John S. James* is the significance of the language in that opinion that the machine should "treat the sugar itself" or that the device should have "some relation to the manufacture of sugar per se."

In the instant case these essentials are amply supported. As found by the Customs Court, "the conditioning machine does treat the sugar *per se*."

We do not find persuasive appellant's contention that the legislative history of the tariff acts cited warrants the strict construction for which appellant contends. We deem it pertinent to point out the statement in the *Summaries of Tariff Information*, Vol. 16, Free List, Part I, 1950, where the scope of the sugar manufacturing machinery is described as follows (at page 73) :

This summary covers all types of sugar-manufacturing machinery, which includes equipment used in processes ranging from the preparation of the raw stock to the refining of the sugar. Some of the equipment is standardized and some is specially designed and constructed for particular plants. Among the many kinds of machines used in the manufacture of sugar are cane knives, cane crushers and shredders, cane mills, beet slicers and diffuser tanks, juice heaters, carbonation tanks, filters, evaporators, vacuum pans, centrifugal machines,

---

[3] 48 CCPA at 78.

melting tanks, *driers, sifters or graders, and grinding and cubing equipment.* [Emphasis supplied.]

We are here, of course, dealing with the Tariff Act of 1930. The paragraph with which we are concerned is one relating to chief use. This court has heretofore quoted and relied upon the most recent *Summaries of Tariff Information* with reference to the uses of imported merchandise and the scope of the provisions under which such are classified. *United States* v. *Shelford, Inc., Wheeler & Miller*, 53 CCPA 53, C.A.D. 876. The determination of chief use should be made at the time of importation. *United States* v. *C.S. Emery & Company*, 53 CCPA 1, C.A.D. 868. Congress does not legislate merely for the purpose of preserving a status quo. Tariff laws embrace within their contemplation future as well as present germane situations. *United States* v. *Burroughs-Wellcome Co. Inc.*, 43 CCPA 142, C.A.D. 621.

We are persuaded therefore that since the above tariff summary covers "all types of sugar-manufacturing machinery" and specifies, among component elements, "centrifugal machines, melting tanks, *driers, sifters or graders, and grinding and cubing equipment*" (emphasis supplied), it is entitled to weight in defining the scope of the tariff provision in issue as to machinery imported after 1950. There can be no question that the Weibull conditioner and blender functions as a drier in the removal of about 50 percent of the remaining surface moisture.

Upon consideration of the record herein, the arguments of counsel for the respective parties, and the authorities cited, we find no reversible error in the decision of the Customs Court. The judgment below is accordingly *affirmed.*